when you're ready. Good morning and may it please the court. My name is Elia Herrera and I represent petitioner Ricardo Martinez-Rodriguez. I would like to reserve two minutes of my time for rebuttal. Okay, keep your eye on the clock and we'll try to help. I will. Thank you, Your Honor. This court should rule in favor of Mr Martinez under the procedural safeguards established in Rand v. Holder. This notice and opportunity corroboration requirement is dispositive in this case. The court should rule in favor of Mr Martinez for two additional reasons. First, the BIA and IJ's holdings are not supported by substantial evidence. And second, the EIJ and BIA failed to conduct an individualized inquiry to determine whether if Mr Martinez ended up in a mental institution, he would be tortured there. I will begin by talking about Rand v. Holder. In Rand v. Holder, this Court set out a sequential analysis that an immigration judge should follow when determining whether a petitioner or an applicant meets his or her burden of proof. Under that analysis, the IJ must determine whether an applicant's credible testimony alone meets the applicant's burden of proof, then the IJ may require corroborative evidence. If corroboration is needed, the IJ must give the applicant notice of the corroboration that is required and an opportunity to produce the requisite corroborative evidence or to explain why that evidence is not available. Did you tell the Board that you wanted to have the opportunity to present more evidence? Your Honor, and your question brings me to the Government's 28J in this case, in which they bring the exhaustion argument. We believe at this point, and I will answer your question, we believe at this point there is no exhaustion issue. But I would like to comment on the Government's 28J and because the government's actions in this case support that there is no exhaustion issue in this case, and that is what we mean. Is there no exhaustion issue because you exhausted? It would help if you could answer. Did you present it to the Board? Yes, Your Honor. So our position at this point, my point about the 28J is that we thought briefing has been concluded for almost a year in this case, and it is only on the eve of oral argument that the government brings this exhaustion argument, which shows that exhaustion, which is not a new theory, and the government is not signing a new case, is also not an issue in view of the government. I have to say, even before we got the 28J letter, it occurred to me, and we have a lot of cases in which we've said, under the statute, exhaustion is a requirement of our subject matter jurisdiction. So I'm not sure the government can waive it. Yes, Your Honor, our position is not that the government can waive the exhaustion, and I do understand that it is a jurisdictional issue. My point is that in the fact that the government has not brought it, it's clear to us that exhaustion is not an issue in this case, and that the government has realized that they actually lose this case on the substantive issue of corroboration. In terms of an answer to your question. But the question, Judge Miller, the questions remain, did you exhaust? Yes, Your Honor. And for that question, I would look to Wren v. Holder. And Wren v. Holder has a discussion on the jurisdictional issue in this case. Jurisdiction or exhaustion for purposes of this issue is determined on whether the BIA is put on notice of a particular issue. And the Ninth Circuit does not employ this exhaustion doctrine in a formalistic manner. In this, in Wren v. Holder, which was a pro se applicant, the applicant simply stated that they believed they had met their burden of proof in challenging the IJ's decision that they had not. In this, in our case, it's analogous in the sense that the IJ made a decision as to whether or not Mr. Martinez would end up in a mental institution. In the BIA, in the BIA brief, Petitioner's attorney in that case was specifically challenging that decision by the IJ that Petitioner had not met his burden of proof. And for that, I would look to AR 20, where Petitioner's brief is not just stating you are wrong, but actually affirmatively stating, additionally, Respondent will likely become homeless in Mexico because he will be unable to access the treatment and medications that he requires. Respondent's parents in Mexico are unable to assist him because they are elderly and impoverished and his mother suffers from cancer. But that's a statement of what his ultimate conclusion is. It is not a statement, and I have some additional evidence of this that I would like to be able to present if only I had known that I needed to present it. Yes, Your Honor. Well, in the Ninth Circuit, there is no requirement that an applicant use the magic words of corroboration or I needed to, at least under Wren v. Holder, you don't have to say Sure. So what language supports, do you believe, your conclusion that corroborating evidence is necessary? What comes closest? That corroborates, Your Honor, so I would look to AR 20 and the brief that was filed by Petitioner in this case. And the way that I think it makes sense to look at this is that Petitioner is challenging the IJ's decision that he did not meet his burden of proof. And part of that challenge is the factual statements that he makes about his family in Mexico. So the BIA was aware that the issue of whether or not his parents would support him in Mexico was an issue in this case and an issue that he was contesting. I mean, I'm not sure that's, I mean, I grant that was an issue that was contested, but to say that there was a failure of corroboration suggests that, you know, he said something and then they said, well, we need some additional evidence beyond your testimony. And as I read the Board's opinion, what they're really saying is that we're not sure that he even said the testimony that he's now saying in his brief. And when you look at the testimony, particularly about whether his sister would continue to support him, every time he's asked, he says, maybe she wouldn't, I don't know. So I guess the question is, is it really even appropriate to talk about this as a failure of corroboration as opposed to a failure of Petitioner himself to offer non-speculative testimony as to what would actually happen? Yes, Your Honor. It's clear from the decision both of the IJ and the BIA that the first finding was... Can I just say something? Yes. But that's in the context of him having a mental illness, correct? It's in the context of... In other words, his testimony was in the context, and I'm not arguing his or commenting on his competence because that seems to have been resolved, but there was also a finding that he was credible? There was a finding that he was credible, Your Honor. Is that significant? Yes, that is significant, Your Honor. Why? Well, it's significant in the sense that, well, first of all, it makes it so that I'm running out of time, but I'm going to answer your question if that's okay. Oh, yeah, please do. Okay. Go ahead. It's significant in the sense that it puts, once Petitioner is found credible, first of all, it puts it squarely under Wren v. Holder. So in this instance, the IJ is saying, yes, I believe you are credible, but you do not give us enough evidence, and then faults in him for not providing that evidence, which was a procedure violation, as we outlined in our brief. So I think the credibility is important for that, as well as for Judge Miller's point about whether does it even make a difference that Petitioner didn't have the benefit of additional evidence. And I think in this instance, it would make a difference because the IJ did find him credible, but there was just not sufficient evidence according to the IJ, which is an issue that we can test, as well. Okay. Why don't we hear from the government? And you've asked to reserve some time. We'll make sure you get enough time to respond. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court, Alison Freyre for the Attorney General. The issue in this case is both clear and simple. The agency found that Mr. Martinez Rodriguez had not established an objectively reasonable fear of persecution upon return to Mexico, and he has not shown before this Court that the record compels a contrary conclusion. The Court need go no further to deny his petition for review with respect to both asylum and withholding of removal. Opposing counsel brings up the issue of Wren, and as we argued in our 28-J, the government argues that Mr. Martinez Rodriguez did not adequately exhaust that issue. He did not raise anything to the Board that would suggest that he was characterizing the issue as faulting him for failing to provide evidence. Is exhaustion a waivable argument? If we're talking habeas, for example, it's absolutely waivable. It is. Is it waivable here? No. We would argue it's not. This Court has ruled that exhaustion before the Board in this context is both mandatory and jurisdictional, and because it's... What's the case that stands for that? Abebe v. Mukasey. And because... Also, this Court has ruled that the alien needs to exhaust before the Board any procedural error that the Board itself could fix to give the agency an opportunity to correct its own errors before coming on petition for review, and that case is SOLA, which is cited in our 28-J. So... So, waivable or not, somebody wasn't minding the store when the government wrote its first brief. Yes. I don't know whether it was you or somebody else, but somebody wasn't paying attention. It's true. The government's brief is not the best we've ever written, and I apologize for that. As soon as I realized the mistake, I corrected it as soon as I could. And so, the Wren issue has not been adequately exhausted, which means we have no agency decision on that issue. But additionally, even if a petitioner had adequately exhausted the corroboration issue, it would not apply. Both the statute and Wren itself make it clear that the issue arises only where the I.J. is faulting the applicant for failing to provide corroborative evidence, which is not what was happening here. The I.J. was looking at the evidence in the record, which she found credible, noting some things that weren't there, and then ruling based on the evidence in the record. She didn't fault the petitioner for failing to provide the statements from the sister and the parents. She mentioned that they weren't there, but she didn't rule that that was the reason he had failed to meet his burden of proof. Instead, she looked at his testimony, which she deemed credible, and found that the testimony wasn't sufficient. But didn't he say, words to the effect, I don't think my sister will support me. She'll forget about me when I'm in Mexico? He did say that. So, that was part of her, I mean, that's in her, that's in the decision, correct? Yes. So, how is that not a significant part of her analysis? The trouble is, he also clearly testified at page 157 of the record that his sister told him that she will pay for his medication in Mexico. So, he's testified both ways. So, just step back a second. You have folks who, no one knows what's going to happen in the future. And I don't know that we necessarily want to fault people for giving their sort of best opinion, an honest opinion, rather than saying qualifiably, there's no way this person's going to support me. I mean, I know it's sort of, maybe that's a tougher analysis and kind of difficult in a way, but it's, at least for me, it's hard to fault someone for being hyper-honest and offering an opinion about what he thinks will happen, even when it is somewhat against his interests. So, to me, maybe the corroboration component is, do you want to be more specific on this issue and provide a little bit more gloss to this so we can understand whether there's anything to it? I agree that a statement from the sister could have been helpful, but that doesn't mean that I.J. was denying the claim on that basis in a way that would make Wren apply. And in part, possibly because he did clearly, Mr. Martinez-Renriquez clearly testified that his sister promised to continue paying for his medications in Mexico, in addition to his worry that she might forget about him, which I don't think that I.J. thought was reasonable in light of the fact that she's been supporting him for years and had promised to continue to do so. While he's been living in her home here. Correct. Though she also did, according to his testimony on page 157, she did tell Mr. Martinez-Renriquez that she will pay for his medication in Mexico specifically. And that, I think that I.J. found that specific promise more credible than his fear that she might forget about him because she's been supporting him for years. Moreover, Mr. Martinez-Renriquez has been on and off his medications over the years while he's been living in the United States and for a few months in Mexico in 2009. And even while he's off his medications, he seems to be able to maintain a stable, functional life. He works. It's mostly been under the table, but he's been undocumented, so that may be why he's been working under the table. He's been working five to six hours a day. He had friends until they moved away. He had a girlfriend. So it seems that even if, for some reason, his sister did completely forget about him after years of supporting him, that he might not. He hasn't shown that he has an objectively reasonable fear of persecution upon return. If he were able to establish that his sister wouldn't pay for his meds and his parents wouldn't let him live with them, that's an if, do we have any holding yet as to whether or not the ill-treatment that he anticipates is on a protected ground? No, nor do we have a ruling from the agency on whether that mistreatment would rise to the level of persecution or of torture. The agency's decisions are focused solely on his objectively reasonable fear, and then for Kat, whether it's more likely than not that he would be institutionalized, but the agency didn't go any further. They didn't need to, and neither does this court in deciding the petition for review. Can I ask, I just found the passage in Mbebe you're referring to, and there's a statement that it's jurisdictional, but we haven't specifically addressed the question of whether it's waivable. You're just inferring that because it's subject matter jurisdiction, you can't waive it. Correct. I haven't found anything in this court about whether the government can waive it. I think usually our briefing doesn't raise that question, luckily. Maybe we're going to get a decision as to whether it's waivable. If there are no further questions, thank you. Thank you, Your Honor. I will try to use my time efficiently. My first point is that Wren versus Holder clearly applies in this case. The IJ specifically noted the evidence that was missing before ruling that Mr. Martinez had not met his burden. My second point is that this issue has been exhausted in this case. The corroboration is part of the substantial evidence analysis here, which was clearly exhausted. Because of the way that the Ninth Circuit has formulated this requirement as something that is not formalistic, then we would request additional time to brief this issue because of the nuances in the Ninth Circuit and because we believe that in this case this issue has been exhausted and we have not been given the benefit of time to fully brief the issue. Unless and until there's an order from this court with respect to supplemental briefing, we don't need it. In the absence of an order, no additional briefing. Thank you, Your Honor. Thank both sides for your arguments in this case. Martinez-Rodriguez v. Barr now submitted for decision.
judges: W. Fletcher, Miller, Pregerson